371 So.2d 86 (1979)
STATE of Florida, Appellant,
v.
Scotty KEATON, Appellee.
No. 54359.
Supreme Court of Florida.
May 10, 1979.
*87 Jim Smith, Atty. Gen., and Robert L. Bogen, Asst. Atty. Gen., West Palm Beach, for appellant.
Steven G. Brady, Fort Pierce, for appellee.
SUNDBERG, Justice.
Appellee was charged by information under section 365.16(1)(a), Florida Statutes (1977),[1] with making a "comment or *88 suggestion which is obscene, lewd, lascivious, filthy, or indecent" to another by means of telephone communication. Appellee filed a motion to dismiss the information in the County Court for Okeechobee County, alleging that the charging statute is overbroad and violative of his right to free speech.[2] The county court granted appellee's motion to dismiss and this appeal followed. Because the lower court initially and directly passed upon the validity of a state statute, we have jurisdiction. Art. V, § 3(b)(1), Fla. Const. The issue before us is whether section 365.16(1)(a), Florida Statutes (1977), suffers from the infirmity of overbreadth under both the Florida and federal constitutions.
Appellee argues that section 365.16(1)(a) is not limited to language which is "obscene" as defined by Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973)  language which, taken as a whole, appeals to one's prurient interest, portrays sexual conduct in a patently offensive way, and lacks serious literary, artistic, scientific, or political value. Rather, appellee submits that the enactment proscribes the mere use of distasteful language over the telephone. This is so because an expression may be obscene according to the dictionary definition without appealing to the prurient interest and, thus, without falling within the legal definition of "obscenity" enunciated in Miller. See Hess v. Indiana, 414 U.S. 105, 107, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973). Because the first amendment does not permit the state to prohibit the use of vulgar language without more, subsection (1)(a) is impermissibly overbroad. Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971); Brown v. State, 358 So.2d 16 (Fla. 1978); Spears v. State, 337 So.2d 977 (Fla. 1976). Appellee argues further that if the enactment is directed solely to language defined as obscene under Miller, it is overbroad because its proscriptions are not limited to nonconsensual telephone calls  where the listener has been subjected to the uninvited use of such language. To outlaw obscene language where both the caller and listener have consented to its use constitutes an invasion of the parties' right to free speech.
Appellant argues that although the express terms of subsection (1)(a) proscribe only obscene comments in a telephone conversation, we should read that provision in pari materia with parts (b) through (d) of the statute. When read in conjunction with the remainder of the enactment, posits appellant, it is clear that subsection (1)(a) is intended to prohibit the use of obscene language with the intent to harass the listener. In support of its construction of subsection (1)(a), appellant points to the title of chapter 69-25, Laws of Florida, enacted as section 365.16, which reads: "AN ACT relating to obscene, harassing and threatening telephone calls... ." (e.s.) Because section 365.16(1)(a) is directed to conduct  obscene phone calls which are harassing  rather than at pure speech, submits appellant, the provision is not violative of appellee's first amendment freedom of speech. Further, because subsection (1)(a) is limited *89 to nonconsensual telephone calls, it constitutes a valid legislative attempt to protect the substantial privacy interests of the listener, whether it proscribes only language defined as obscene under Miller or encompasses vulgar language as well.
For the following reasons we conclude that section 365.16(1)(a), Florida Statutes (1977), is unconstitutionally overbroad and, therefore, the county court properly granted appellee's motion to dismiss.
Fundamental principles of statutory construction dictate that an enactment should be interpreted to render it constitutional if possible.[3] However, the courts may not vary the intent of the legislature with respect to the meaning of the statute in order to effect this result. See Deltona Corp. v. Florida Public Service Commission, 220 So.2d 905 (Fla. 1969); Florida State Racing Commission v. McLaughlin, 102 So.2d 574 (Fla. 1958); Dade Federal Savings & Loan Association v. Miami Title & Abstract Division, 217 So.2d 873 (Fla.3d DCA 1969). The intent of the legislature with regard to the scope of section 365.16(1)(a) is arguably unclear. As noted by appellant, the title of the act is cast in the conjunctive  "obscene, harassing and threatening telephone calls" (e.s.)  which lends support to its contention that subsection (1)(a) is intended to proscribe obscene telephone calls which are also harassing. However, the legislatively supplied heading for section 365.16 is cast in the disjunctive and reads: "obscene or harassing telephone calls." (e.s.) Further, subsection (1) is divided into four distinct parts, each of which is also expressed in the disjunctive. Finally, the express terms of (1)(a) are directed solely to obscene comments, while parts (b) through (d) relate to harassing calls with no mention of the use of obscene language. Both the heading of section 365.16 and its composition, therefore, indicate that the legislature intended that it cover two distinct areas  the making of obscene comments on the one hand, and the specified use of the telephone to annoy, abuse, threaten, or harass the person called, on the other.
In order to construe subsection (1)(a) as suggested by appellant, it would be necessary to read the term "or" in the heading of section 365.16 as "and." Furthermore, we would have to find that the element of intent to harass contained in parts (b) through (d) is, by implication, an element of part (a). Our courts have engaged in such an interpretation only when necessary to effectuate the clear intent of the legislature; when, for example, a literal reading of the statute would render it meaningless. Pompano Horse Club, Inc. v. State ex rel. Bryan, 93 Fla. 415, 111 So. 801 (1927); Dotty v. State, 197 So.2d 315 (Fla. 4th DCA 1967); Pinellas County v. Woolley, 189 So.2d 217 (Fla.2d DCA 1966). Because appellant's tendered construction of section 365.16(1)(a) is contrary to the intent of our lawmakers, however, we cannot engage in the suggested rewriting of terms. Moreover, a reading of parts (a) through (d) of subsection (1) as distinct provisions does not render the statute meaningless. In McCall v. State, 354 So.2d 869 (Fla. 1978), we declined a similar invitation to read an element of one part of a statute into another portion of the enactment when the two parts were separated by the disjunctive "or." We considered whether section 231.07, Florida Statutes (1975), infringes upon the first amendment right of free speech. That statute provides:
Any person who upbraids, abuses or insults any member of the instructional staff on school property or in the presence of the pupils at a school activity, or any person not otherwise subject to the rules and regulations of the school who creates a disturbance on the property or grounds of any school, who commits any act that interrupts the orderly conduct of a school or any activity thereof shall be guilty of a misdemeanor of the second degree, punishable as provided by law. This section shall not apply to any pupil in or subject to the discipline of a school. [Emphasis supplied.]
*90 After acknowledging the constitutional directive that speech may not be prohibited unless the manner of its expression is incompatible with the normal activity of a particular place at a particular time,[4] we noted that the enactment contained two distinct parts, one of which violated this directive:
The first portion of Section 231.07, under which the appellant was convicted, requires proof that a member of the instructional staff was upbraided, abused, or insulted, on school property, or in the presence of pupils at a school activity.[3] There is no language tying the prohibited expression to disruption of normal school activities at specific fixed times.
[3] This portion of the statute is joined to the remaining portions by the disjunctive "or" and must therefore be treated separately.

.....
... We note that all other provisions of this statute require expressive activity designed to disturb the school atmosphere.
354 So.2d at 872 (emphasis supplied). Thus, because the first and second portions of section 231.07 were separated by the disjunctive "or," we could not read the element of disruption contained in the second part into the preceding provision in order to render it constitutional. The composition of the statute before us even more strongly militates against reading the element of "intent to harass" in subsection (1)(b) through (d) into subsection (1)(a). Not only did the legislature use the disjunctive "or" in section 365.16, as it did with the statute in McCall, but it also separated subsection (1) of the enactment into four distinct, lettered provisions.
Because the scope of section 365.16(1)(a) is not limited to cases where the listener does not consent to use of the proscribed language, a citizen reading the provision might reasonably believe that it criminalizes telling an "off-color joke" to a willing listener or forbids a sexually oriented conversation between lovers. Such a prohibition constitutes a violation of the first amendment freedom of speech. Even if subsection (1)(a) is construed to encompass only language defined as obscene under Miller v. California, the enactment is nevertheless violative of this first amendment right because it does not contain the essential qualifying element  an unwilling listener. Our conclusion in this regard is grounded upon the decision of the United States Supreme Court in Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969).
In Stanley v. Georgia, the Supreme Court held that the mere private possession of materials defined as obscene under Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957),[5] could not constitutionally be made a crime. The majority rejected the contention that a state may regulate obscenity without regard to the context within which the issue arises. The Court noted that cases in which obscenity was found not to be protected by the first amendment dealt generally with use of the mails to distribute obscene materials, the sale of obscene materials, or possession with intent to sell or distribute.[6] Although these cases acknowledged an important governmental interest in regulating commercial *91 distribution of obscene materials, the Court concluded that the first amendment interests of the individual prevailed in the context of private possession of obscene materials:

[T]he Constitution protects the right to receive information and ideas. "This freedom [of speech and press] * * * necessarily protects the right to receive * * *." This right to receive information and ideas, regardless of their social worth, is fundamental to our free society. Moreover, in the context of this case  a prosecution for mere possession of printed or filmed matter in the privacy of a person's own home  that right takes on an added dimension. For also fundamental is the right to be free, except in very limited circumstances, from unwanted governmental intrusions into one's privacy.

.....
... [M]ere categorization of these films as "obscene" is insufficient justification for such a drastic invasion of personal liberties guaranteed by the First and Fourteenth Amendments. Whatever may be the justifications for other statutes regulating obscenity, we do not think they reach into the privacy of one's own home. If the First Amendment means anything, it means that a State has no business telling a man, sitting alone in his own house, what books he may read or what films he may watch. Our whole constitutional heritage rebels at the thought of giving government the power to control men's minds.
394 U.S. at 564-65, 89 S.Ct. at 1247-1248 (emphasis supplied) (citations omitted).
Just as the first amendment freedom of speech protects the right of an individual to possess obscene matter in his own home, this freedom also prohibits the punishment of the mere use of obscene language in a telephone communication. We recognize that a prosecution for an obscene telephone call to which the listener does not object would rarely occur, for absent an offended party to report the incident, it would generally not come to the attention of law enforcement officials.[7] However, the danger of an overbroad statute lies in its possible chilling effect upon the exercise of a precious first amendment right by those who read its provisions. In invalidating the "public obscenity" statutes in Spears v. State, 337 So.2d 977, we ackknowledged this risk:
Overbroad statutes create the danger that a citizen will be punished as a criminal for exercising his right of free speech. If this possibility were the only evil of overbroad statutes, it might suffice to review convictions on a case by case basis. But the mere existence of statutes and ordinances purporting to criminalize protected expression operates as a deterrent to the exercise of the rights of free expression, and deters most effectively the prudent, the cautious and the circumspect, *92 the very persons whose advice we seem generally to be most in need of.
Id. at 980.
We do not hold that the state may not proscribe obscene telephone communications regardless of the circumstances. Were section 365.16(1)(a) limited to obscene calls to a listener at a location where he enjoys a reasonable expectation of privacy (such as the home) which calls are intended to harass the listener, the enactment would pass constitutional muster. Because such a statute would assume the existence of a listener who is unwillingly subjected to vulgar or obscene epithets, it would constitute a valid legislative attempt to protect the substantial privacy interests of the listener. "Time, place and manner" limitations upon the exercise of speech have been recognized by decisions of this Court and the United States Supreme Court where they are in furtherance of legitimate state interests. Erznoznik v. City of Jacksonville, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975); Rowan v. United States Post Office Department, 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970); McCall v. State, 354 So.2d 869. The state has a legitimate concern with protecting substantial privacy interests of its citizens from being invaded in an essentially intolerable manner. Cohen v. California, 403 U.S. at 21, 91 S.Ct. 1780. Further, the constitutionality of this statute would not hinge upon whether it prohibited merely filthy or vulgar words or only language characterized as "obscene" under Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419.
Our recent decision in Spears v. State does not contradict the conclusion that the state may prohibit the use of "obscene" and harassing telephone communications regardless of whether the Miller test is utilized. In Spears we held that section 847.05, Florida Statutes (1975), which proscribed the public use of indecent or obscene language, was an unconstitutional encroachment upon the first amendment freedom of speech. Our holding was grounded upon the fact that section 847.05 was not limited to words defined as obscene under the Roth (now Miller) test or to "fighting words."[8] These limitations expressed in Spears, however, do not necessarily apply within the context of private telephone communications. Spears dealt with statutory restrictions upon public speech. Here, as we have recognized, section 365.16(1)(a) could be couched in appropriate terms so as to regulate certain types of harassing speech foisted upon a listener in a place where he might reasonably expect privacy. An important interest is present in this context which held lesser importance in Spears  the privacy interests of the listener, which constitutionally entitle the state to protect him from unwilling subjection to verbal abuse. This interest is afforded more constitutional protection within the sanctum of a home than in a public forum. In Cohen v. California, the Supreme Court elucidated the varying constitutional protection afforded this privacy interest, depending upon the public or private context within which it arises:
[M]uch has been made of the claim that Cohen's distasteful mode of expression was thrust upon unwilling or unsuspecting viewers [in the corridor of a courthouse], and that the State might therefore legitimately act as it did in order to protect the sensitive from otherwise unavoidable exposure to appellant's crude form of protest. Of course, the mere presumed presence of unwitting listeners or viewers does not serve automatically to justify curtailing all speech capable of giving offense. See, e.g., Organization for a Better Austin v. Keefe, 402 U.S. 415, [91 S.Ct. 1575, 29 L.Ed.2d 1] (1971). While this Court has recognized that government may properly act in many situations to prohibit intrusion into the *93 privacy of the home of unwelcome views and ideas which cannot be totally banned from the public dialogue, e.g., Rowan v. Post Office Dept., 397 U.S. 728, [90 S.Ct. 1484, 25 L.Ed.2d 736] (1970), we have at the same time consistently stressed that "we are often `captives' outside the sanctuary of the home and subject to objectionable speech." Id., at 738, [90 S.Ct. 1484, 1491]. The ability of government, consonant with the Constitution, to shut off discourse solely to protect others from hearing it is, in other words, dependent upon a showing that substantial privacy interests are being invaded in an essentially intolerable manner.

403 U.S. at 21, 91 S.Ct. at 1786 (emphasis supplied). Consequently, where the substantial privacy interests of a listener in a telephone conversation are involved, the Constitution will tolerate greater limits upon the dialogue of a speaker in order to prevent a nonconsensual intrusion upon these interests. In contrast, the constitutionally permissible restrictions upon the language which an individual may use in a public forum are more narrow.
We therefore hold that section 365.16(1)(a), Florida Statutes (1977), is impermissibly overbroad in violation of the first amendment freedom of speech under the Florida and federal constitutions.
Accordingly, the order of the County Court of Okeechobee County, Florida, granting appellee's motion to dismiss is hereby affirmed.
It is so ordered.
ENGLAND, C.J., and OVERTON and ALDERMAN, JJ., concur.
HATCHETT, J., concurs in result only.
ADKINS, J., dissents with an opinion with which BOYD, J., concurs.
BOYD, J., dissents with an opinion with which ADKINS, J., concurs.
ADKINS, Justice, dissenting.
I dissent.
The legislature has attempted to prevent the use of the telephone by a person when he attempts to terrify, intimidate, threaten, harass, annoy, or offend people by the use of certain language. I recognize that freedom of speech is among the fundamental personal rights and liberties which are protected by the fourteenth amendment to the United States Constitution from invasion by state action. However, government may prohibit intrusion into the privacy of the home of unwelcome views and ideas which cannot be totally banned from the public dialogue. Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971).
The use of one's telephone clearly involves substantial privacy interests which the state may recognize and protect. The defendant's right to freedom of speech ended when he attempted to invade, by the use of a telephone, the substantial privacy interests of another in an intolerable manner.
The statute under attack was geared toward conduct, i.e., use of the telephone, not speech. I would uphold the constitutionality and protect the privacy of the individual in his own home.
BOYD, J., concurs.
BOYD, Justice, dissenting.
I respectfully dissent from the majority opinion holding that section 365.16(1)(a), Florida Statutes (1977), is impermissibly overbroad in violation of freedom of speech protected by the United States and Florida constitutions. The majority's objection is that paragraph (1)(a) is susceptible of application to consensual telephone conversations where, because of the privacy interests involved, state power to regulate speech must be denied. My examination of the legislation leads me to conclude that the intent of the provision is to proscribe harassment through the use of obscene telephone calls. Thus, the privacy interests of the individual and the home are protected, rather than endangered, by the enactment.
We should construe the statute, based on the apparent legislative intent, to be intended to punish those who make obscene or indecent statements or suggestions, *94 through the medium of the telephone, to harass, annoy, or abuse an unwilling listener. We should uphold the validity of the statute as so construed.
My principal objection to the majority opinion is that it places great emphasis on freedom of speech while giving too little emphasis to the rights of citizens to live and work privately in their homes and places of business without being annoyed, against their will, by unsolicited gutter language from strangers. The statute is not intended to curb constitutionally guaranteed freedom of speech but to prevent intentional, detrimental conduct that annoys the recipients of such calls.
The issue is not protected speech but unprotected misconduct.
ADKINS, J., concurs.
NOTES
[1] The portions of section 365.16, Florida Statutes (1977), which are relevant to this appeal are as follows:

Obscene or harassing telephone calls.
(1) Whoever by means of telephone communication:
(a) Makes any comment, request, suggestion, or proposal which is obscene, lewd, lascivious, filthy, or indecent; or
(b) Makes a telephone call, whether or not conversation ensues, without disclosing his identity and with intent to annoy, abuse, threaten, or harass any person at the called number; or
(c) Makes or causes the telephone of another repeatedly or continuously to ring, with intent to harass any person at the called number; or
(d) Makes repeated telephone calls, during which conversation ensues, solely to harass any person at the called number shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.
[2] The record does not reflect the substance of appellee's alleged statements. It is clear, nonetheless, that appellee has standing to challenge section 365.16(1)(a) as overbroad. This is so because one may attack an enactment which seeks to restrict first amendment freedoms on this ground without having to show "that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." Dombrowski v. Pfister, 380 U.S. 479, 486, 85 S.Ct. 1116, 1121, 14 L.Ed.2d 22 (1965); accord, Broadrick v. Oklahoma, 413 U.S. 601, 610, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); Aptheker v. Secretary of State, 378 U.S. 500, 517, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964); Thornhill v. Alabama, 310 U.S. 88, 98, 60 S.Ct. 736, 84 L.Ed. 1093 (1940).
[3] Knight & Wall Co. v. Bryant, 178 So.2d 5 (Fla. 1965); Sun Ins. Office, Ltd. v. Clay, 133 So.2d 735 (Fla. 1961); City of Dunedin v. Bense, 90 So.2d 300 (Fla. 1956).
[4] 354 So.2d 869, 870 (citing Grayned v. City of Rockford, 408 U.S. 104, 116, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)).
[5] In the subsequent case of Miller v. California a majority of the Court modified the test for the determination of obscenity enunciated in Roth. The Miller test remains the current standard against which allegedly obscene materials must be measured. However, the modification of this test does not alter the result here.
[6] See, e.g., Ginsberg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968); Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967); Book Named Memoirs v. Attorney General of Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966); Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966); Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964); Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963); Manual Enterprises, Inc. v. Day, 370 U.S. 478, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962); Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959).
[7] If such a conversation were unlawfully intercepted by an eavesdropper or a bugging device, it would be inadmissible as evidence in a trial, hearing before a grand jury, and other proceedings designated by statute. § 934.06, Fla. Stat. (1977). The only apparent situation in which a prosecution might be based upon the report of one who is not a party to such a conversation is when the complainant has "listened in" in the ordinary course of business. In such a case, section 934.02(4)(a) provides that the contents of the call are exempted from the exclusion of section 934.06. State v. Nova, 361 So.2d 411 (Fla. 1978), is illustrative of such a situation. There, the defendant Nova was convicted of the murder of his girlfriend, Revel. On the morning of her murder, Revel received a call at work from the defendant which left her visibly upset. When the decedent received a second call from the defendant, her supervisor, Ms. Bentley, listened to the conversation on an extension phone. Nova's subsequent conviction was based in part upon the supervisor's testimony as to threats made by Nova during this second call. In affirming the trial court's ruling that the exclusion provided by section 934.02(4)(a) was applicable, we noted:

The trial judge found that it was reasonable for Bentley, as Revel's supervisor, to listen on the phone in order to find out why Revel was so upset. He concluded that Bentley's use of the telephone in this instance was for the benefit of her employer and was in the ordinary course of business... .
361 So.2d at 413.
[8] The United States Supreme Court has sustained a prohibition against the public use of "fighting words," Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), and has strongly suggested that a ban on the use in a public forum of words which are obscene under Roth (now Miller) would pass constitutional scrutiny. Cohen v. California, 403 U.S. at 20, 91 S.Ct. 1780.