382 So.2d 687 (1980)
STATE of Florida, Appellant,
v.
Arlene ELDER, Appellee.
No. 55182.
Supreme Court of Florida.
April 3, 1980.
*688 Jim Smith, Atty. Gen., and A.S. Johnston, Asst. Atty. Gen., Tallahassee, for appellant.
*689 Wm. J. Sheppard and Stephen J. Weinbaum of the Law Offices of Wm. J. Sheppard, Jacksonville, for appellee.
SUNDBERG, Justice.
This is an appeal from an order of the County Court for Duval County, Florida, which initially and directly passed upon the validity of section 365.16(1)(b), Florida Statutes (1977). The issue presented is whether section 365.16(1)(b), which forbids the making of an anonymous telephone call with the intent to annoy, abuse, threaten, or harass the recipient of the call, is unconstitutionally overbroad on its face. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution.
Appellee, Arlene Elder, was charged by amended information with making a telephone call, without disclosing her identity, to one Victoria Elaine Elder solely to annoy, abuse, threaten or harass her contrary to section 365.16(1)(b), Florida Statutes (1977).[1] Appellee moved to dismiss the information on the grounds that the statutory provision was facially overbroad in violation of article I, sections 4 and 9 of the Florida Constitution, and the first and fourteenth amendments to the United States Constitution. The county court found that subsection (1)(b) proscribed "pure speech" contrary to the case law which the court said admits of only two classes of unprotected speech  language posing a clear and present danger of breach of the peace ("fighting words") and obscenity. The court stated that because neither the statutory language nor any judicial gloss had limited the statute's application to fighting words or obscenity, the statute was overbroad without regard to the particular facts of the case. To support its conclusion that the statute was overbroad, the court cited several examples of constitutionally protected speech which would purportedly come within the statute's proscription: a phone call made with specific intent to "annoy" a person by telling him that he had bad manners; a phoned "threat" to a friend telling him that if he does not pay off a small debt he will never be spoken to again; one businessman calling another intending to "abuse" and "annoy" the latter by calling him dishonest. Finally, the court rejected any limiting construction of section 365.16(1)(b) on the basis that to so limit the statute and at the same time apply it to the defendant would deny him due process of law because of the lack of prior notice of the conduct proscribed. For the following reasons, we believe that the county court erred in finding section 365.16(1)(b) facially unconstitutional.[2]
We begin with the proposition that because of the transcendent value of constitutionally protected expression, statutes regulating expression must be narrowly tailored to further the legitimate state interest involved, Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); McCall v. State, 354 So.2d 869 (Fla. 1978); so that the first amendment freedoms are given the breathing room *690 needed to survive. NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Brown v. State, 358 So.2d 16 (Fla. 1978). Where a statute punishes only spoken words it is facially constitutional under the overbreadth doctrine only if, as construed by the state courts, it is not susceptible of application to constitutionally protected speech. Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); Spears v. State, 337 So.2d 977 (Fla. 1976). We note in passing that the trial court, in ruling that section 365.16(1)(b) was unconstitutionally overbroad because it was not limited to the proscription of fighting words or obscenity, overlooks the fact that the constitutional right of free speech does not absolutely protect libelous or slanderous speech, nor does free speech absolutely insulate a person from tort liability for invasion of privacy or intentional infliction of emotional distress, nor from criminal liability for certain forms of "pure speech."[3] Such expression belongs to "that category of utterances which `are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'" Gertz v. Robert Welch, Inc., 418 U.S. 323, 340, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789 (1974), quoting Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 1031 (1942).
We need not, however, pass on whether section 365.16(1)(b) validly proscribes pure speech. Rather, we disagree with the trial court's characterization of the section as a proscription of pure speech. This statutory provision is not directed at the communication of opinions or ideas, but at conduct, that is, the act of making a telephone call or a series of telephone calls, without disclosing identity and whether or not conversation ensues, with the intent to annoy, abuse, threaten or harass the recipient of the call. Accord, Baker v. State, 16 Ariz. App. 463, 494 P.2d 68 (1972). Cf. S.H.B. v. State, 355 So.2d 1176 (Fla. 1978). That this conduct may be effected in part by verbal means does not necessarily invalidate the statute on freedom of speech grounds. At most, the use of words as the method with which to harass the recipient of the call involves conduct mixed with speech, to which the controlling constitutional considerations differ somewhat from those applied to pure speech. Specifically, with regard to overbreadth, the applicable test is stated in Broadrick v. Oklahoma, 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830 (1973): "[W]here conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." As construed below, section 365.16(1)(b) is clearly applicable to a whole range of activity which is easily identifiable and which constitutionally may be proscribed. See Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). We hold, therefore, that the asserted overbreadth of section 365.16(1)(b) is not real and substantial judged in relation to the statute's plainly legitimate sweep.
In construing section 365.16(1)(b), we are mindful of our responsibility to resolve all doubts as to the validity of a statute in favor of its constitutionality, provided the statute may be given a fair construction that is consistent with the federal and state constitutions as well as with the legislative intent. State v. Keaton, 371 So.2d 86 (Fla. 1979); White v. State, 330 So.2d 3 (Fla. 1976). The Court will not, however, abandon judicial restraint and invade the province of the legislature by rewriting its terms. State v. Keaton; Brown v. State, 358 So.2d 16 (Fla. 1978). In dealing with statutory regulation of first amendment activity, this Court has in the past strictly construed a challenged statute to *691 uphold it against vagueness or overbreadth attacks. See, e.g., State v. Saunders, 339 So.2d 641 (Fla. 1976); White v. State, supra. After careful consideration we, likewise, here conclude that the language of section 365.16(1)(b) is fairly susceptible to a constitutional construction that is consistent with the legislative intent.
The closely related provisions of subsections (1)(b) through (1)(d) of section 365.16 evince a legislative intent to proscribe an act or a course of conduct that serves little, if any, informative or legitimate communicative function.[4] The statute is carefully worded as to the specific conduct proscribed and is carefully limited with preconditions so as not to infringe on legitimate free speech rights.[5] First of all, the statutory proscription of subsection 365.16(1)(b) through (1)(d) is applicable only against the person performing the act of telephoning someone. This in itself shows a legislative concern not with the content of what was said but with the act of intruding upon another's privacy. Specifically, under subsection (1)(b), this legislative concern is further highlighted by the lack of any requirement that conversation ensue. Next, for conviction under subsection (1)(b), the caller must make the call without disclosing his identity. We wholly agree with the analysis of the United States District Court in United States v. Dorsey, 342 F. Supp. 311 (E.D.Pa. 1972), that the "anonymity of the caller is in itself a circumstance raising discomfort and fear in the receiver of the call." Id. at 313 (construing federal statutory counterpart to Florida subsection 365.16(1)(b)). This anonymity is also a factor militating against any legitimate free speech communicative function. In addition, it must be shown that when the telephone call was made it was the caller's intent to annoy, abuse, threaten or harass. This improper intent must be the motivating factor in the caller's telephoning another person and the call must not serve a legitimate communicative or informative function.[6] Thus, the caller may not circumvent the salutary proscription of the statute merely by using words as the means with which to annoy, abuse, threaten or harass. "[I]t has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." Cox v. Louisiana, 379 U.S. 559, 563, 85 S.Ct. 476, 480, 13 L.Ed.2d 487 (1963).
Finally, the statutory language of subsection (1)(b), "to annoy, abuse, threaten or harass" presupposes that the telephone call is uninvited. It is this nonconsensual element of the telephone call which distinguishes the situation here from that in State v. Keaton, 371 So.2d 86 (Fla. 1979), where we held that subsection (1)(a) of section 365.16 (barring obscene or indecent comments or suggestions over the telephone) was unconstitutionally overbroad. In that decision we stated:
We do not hold that the state may not proscribe obscene telephone communications regardless of the circumstances. Were section 365.16(1)(a) limited to obscene calls to a listener at a location where he enjoys a reasonable expectation of privacy (such as the home) which calls are intended to harass the listener, the enactment would pass constitutional muster. Because such a statute would assume the existence of a listener who is *692 unwillingly subjected to vulgar or obscene epithets, it would constitute a valid legislative attempt to protect the substantial privacy interests of the listener.
Id. at 92. What was broadly proscribed under subsection (1)(a), then, was not simply the act of making an uninvited obscene telephone call, but also the content of pure speech consensually communicated through a telephone.[7] We declined in Keaton to uphold section 365.16(1)(a) by narrowly construing it to proscribe only "obscenity" as defined under Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), a form of expression unprotected in the public forum, because the statute could nevertheless contravene the first amendment in failing to contain the essential qualifying element of an unwilling listener.
In contrast to the statutory provision involved in Keaton, section 365.16(1)(b) does assume the existence of an unwilling listener. While it is true that a person may often be a "captive" outside the sanctuary of the home and subject to objectionable forms of expression, the United States Supreme Court, as well as this Court, have recognized that government may properly act in many situations to prohibit intrusion into the privacy of the home of unwelcome views and ideas which cannot be totally banned from the public dialogue. Compare Erznoznik v. City of Jacksonville, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975); Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971); Brown v. State, 358 So.2d 16 (Fla. 1978); and Spears v. State, 337 So.2d 977 (Fla. 1976), with FCC v. Pacifica Foundation, 438 U.S. 726, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978); Rowan v. United States Post Office Dept., 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970); Breard v. Alexandria, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951); Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949); and State v. Keaton, supra.[8] In Rowan v. United States Post Office Dept., supra, the United States Supreme Court upheld the validity of a federal statute permitting an addressee to require the Post Office to order the removal of his name from the mailing lists for "pandering advertisements" against the argument that the statute impeded the communication of ideas. The Court stated that "the right of every person `to be let alone' must be placed in the scales with the right of others to communicate." Id. at 736, 90 S.Ct. at 1490. In response to the contention that the federal statute impeded the free flow of communication, the Court stated, "Nothing in the constitution compels us to listen to or view any unwanted communication, whatever its merit... ." Id. at 737, 90 S.Ct. at 1490.
The United States Supreme Court has thus clearly established that the privacy interest of a person may be accorded greater protection within the sanctum of the home or other private place than it may be accorded in the public forum. Rowan v. United States Post Office Dept., supra; Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). As a result, the federal and state constitutions will tolerate greater limits upon the dialogue of a speaker in order to prevent a nonconsensual intrusion upon those privacy interests. State v. Keaton, 371 So.2d at 92-93. See also Kovacs v. Cooper, 336 U.S. at 87-89, 69 *693 S.Ct. at 453-454. We conclude that whatever minimal free speech value may be associated with an unwanted, anonymous, abusive telephone call simply because it is effected through verbal means under section 365.16(1)(b),[9] such value is clearly outweighed by the substantial privacy interests of the listener. These privacy interests constitutionally entitle the state to protect him from unwilling subjection to verbal or non-verbal abuse.
Accordingly, we hold that section 365.16(1)(b), as construed in this opinion, is constitutional. We, therefore, reverse the County Court for Duval County and remand this cause to that court for proceedings not inconsistent with this decision.
It is so ordered.
ENGLAND, C.J., and ADKINS, BOYD, OVERTON, ALDERMAN and McDONALD, JJ., concur.
NOTES
[1] Although we are here concerned only with subsection (1)(b), the provision under which appellee is charged, we state the substance of subsection (1) in full because of close interrelation of their provisions:

(1) Whoever by means of telephone communication:
(a) Makes any comment, request, suggestion, or proposal which is obscene, lewd, lascivious, filthy, or indecent; or
(b) Makes a telephone call, whether or not conversation ensues, without disclosing his identity and with intent to annoy, abuse, threaten, or harass any person at the called number; or
(c) Makes or causes the telephone of another repeatedly or continuously to ring, with intent to harass any person at the called number; or
(d) Makes repeated telephone calls, during which conversation ensues, solely to harass any person at the called number
shall be guilty of a misdemeanor of the second degree... .
[2] We do agree, however, with the county court's threshold finding that a defendant may challenge a statute's validity on overbreadth grounds without first demonstrating that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity. Lewis v. City of New Orleans, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974); State v. Keaton, 371 So.2d 86 (Fla. 1979).
[3] E.g., Watts v. United States, 394 U.S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) (threatening the President with bodily harm); State v. Saunders, 339 So.2d 641 (Fla. 1976) (falsely reporting some physical hazard in circumstances where such a report creates a clear and present danger of bodily harm to others, such as yelling "fire" in a crowded theater); State v. Beasley, 317 So.2d 750 (Fla. 1975) (speech inciting a riot).
[4] Accord, United States v. Lampley, 573 F.2d 783 (3d Cir.1978). In Lampley, the court upheld the constitutionality of the federal statutory provisions corresponding to subsections (1)(b) and (1)(d) of section 365.16 of the Florida Statutes. The court declared that Congress had a "compelling interest in the protection of innocent individuals from fear, abuse or annoyance at the hands of persons who employ the telephone, not to communicate, but for other unjustifiable motives." Id. at 787.
[5] Indeed, subsection 365.16(1)(c), causing the telephone of another to ring repeatedly with intent to harass, does not even purport to regulate free speech activity.
[6] At least one legitimate communicative or informative function is stated in section 365.16 itself. Subsection (5) of section 365.16 provides: "Nothing contained in this section shall apply to telephone calls made in good faith in the ordinary course of business or commerce."
[7] The statute would purport to criminalize the "telling [of] an `off color joke' to a willing listener or ... A sexually oriented conversation between lovers." State v. Keaton, 371 So.2d at 90.
[8] This is not to say that reasonable "time, place and manner" limitations, which are neutral as to content and which further significant governmental interests, may not be placed upon the exercise of first amendment expression in the public forum, particularly where conduct is mixed with speech. See, e.g., Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 476, 13 L.Ed.2d 487 (1963); Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949); Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); McCall v. State, 354 So.2d 869 (Fla. 1978); White v. State, 330 So.2d 3 (Fla. 1976). See also Erznoznik v. City of Jacksonville, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975), and Lehman v. City of Shaker Heights, 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974).
[9] "Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument." Cantwell v. Connecticut, 310 U.S. 296, 309-10, 60 S.Ct. 900, 906, 84 L.Ed. 1213 (1940).