HARDING, Justice.
We have for review State v. Dixon, 584 So.2d 999 (Fla. 2d DCA 1991), in which the Second District Court of Appeal certified the trial court’s opinion that section 61.-181(5), Florida Statutes (1989),[1] violated article VII, section 10 of the Florida Constitution. We have jurisdiction pursuant to article V, section 3(b)(5) of the Florida Constitution. We hold that section 61.181(5) is constitutional because it does not pledge public credit. Further, we find that even if a pledge of public credit had been involved, section 61.181(5) serves a strong public purpose.
E.D. “Bud” Dixon (Dixon), the Clerk of the Circuit and County Court of Polk County, filed an action seeking a declaratory judgment that section 61.181(5) violated article VII, section 10 of the Florida Constitution.[2] The trial court held that *297 section 61.181(5) pledged public credit without a definitive public purpose, thereby violating article VII, section 10 of the Florida Constitution. The district court certified the trial judge’s opinion and we accepted jurisdiction. Dixon argues that section 61.-181(5) requires his office to disburse funds representing payments made to the domestic relations depository account before the account receives payment of those funds. Consequently, Dixon contends that by complying with the statute he is compelled to either use funds paid by unrelated payors in the depository account or to reimburse the depository account from Polk County’s general revenue account. He concludes that section 61.181(5) requires his office to pledge public credit without a definitive public purpose, and therefore the section is unconstitutional. The State argues that section 61.181(5) does not require a pledge of public credit for two reasons. First, section 61.181(2) allows the clerk to collect a fee for handling and disbursing support payments. The amount of money generated by this fee allows the clerk to disburse the funds from personal checks promptly and without incurring a public liability. Second, the legislature has established a trust fund which allows the clerk to seek reimbursement for returned support cheeks without incurring a public liability. Further, the State argues that even if section 61.181(5) does pledge public credit, the section serves a strong public purpose of promptly disbursing support payments to dependent children and spouses. Thus, the State concludes that section 61.181(5) is constitutional. We agree with the State.
Article VII, section 10 of the Florida Constitution reads in relevant part: “Neither the state nor any county ... shall ... give, lend or use its taxing power or credit to aid any ... person_” We have interpreted the pledging of public credit to mean “the assumption by the public body of some degree of direct or indirect obligation to pay a debt of the third party.” State v. Housing Fin. Auth., 376 So.2d 1158, 1160 (Fla.1979). We have also stated that in order for public credit to be pledged, “the public must be either directly or contingently liable to pay something to somebody.” Nohrr v. Brevard County Educ. Facilities Auth., 247 So.2d 304, 309 (Fla.1971).
We find that section 61.181(5) is not a pledge of public credit because there is no public liability incurred when the clerk disburses support payment checks before receiving payment on those funds. The legislature has ensured that no public liability is incurred by authorizing the clerk to collect a fee for handling and disbursing support payments, and by establishing a trust fund which can reimburse returned checks paid for child support.
Section 61.181(2) provides that “[t]he depository shall impose and collect a fee for receiving, recording, reporting, disbursing, monitoring, or handling alimony or child support payments....”[3] Dixon asserts that the authority for this fee collection predates the legislature’s decision ordering that support payments made by personal check be disbursed within four working days. Thus, he concludes that the legislature did not contemplate that the collected fees be used to pay for returned checks. We find Dixon’s assertions are without merit. A rule of statutory construction requires that the language of the statute be upheld if there is a reasonable basis for doing so. See Tyson v. Lanier, 156 So.2d 833 (Fla.1963) Similarly, “[fjundamental principles of statutory construction dictate that an enactment should be interpreted to render it constitutional if possible.” State v. Keaton, 371 So.2d 86, 89 (Fla.1979). Applying these rules of statutory construction, we find the fee collected by the clerk can be used to cover any expenses associated with “handling alimony or child support payments.” § 61.181(2), Fla.Stat. (1989). These expenses include the payment of support funds within the four working days mandated by the legislature in section *298 61.181(5), as well as the expenses incurred in the collection of worthless checks.
We also note that the domestic relations depository account contained sufficient funds for the clerk to disburse the support funds paid by personal check within the four working days. The record indicates that in 1988 the clerk collected a total of $17,323,964 for the domestic relations depository account of which $505,420 was in authorized fees. The monthly average of collected support funds exceeded $1,400,-000 and collected fees exceeded $42,000. Approximately eight percent of the total support funds collected, $112,000 monthly, was paid by personal check. The domestic relations depository’s average end-of-the-month balance was in excess of $400,000. Thus, the depository account contained sufficient funds to disburse support payments paid by personal check within the four working days required by section 61.181(5).
In addition, Dixon collected sufficient fees to pay any support payments made by returned personal checks. Dixon testified that the fees collected remained on deposit in the domestic relations depository until the end of each month. At the end of the month, he deducted the expenses of operating the domestic relations depository, and transferred the excess fees into the county’s general revenue account. During the period in which Dixon’s office complied with section 61.181(5), May 1989 to October 1989, 108 personal checks were returned for insufficient funds. After redeposit of those checks and other collection efforts, only eight checks amounting to $1,063 remained uncollected. This $1,063 is less than the amount of fees collected by the depository.
The legislature has also provided the clerk with a means to seek reimbursement of returned personal checks paid for child support without pledging public credit. The Child Support Depository Trust Fund (C.S.D.T.F.) provides that the “[cjhild support depository administrators may apply for reimbursement from this trust fund for uncollectible personal checks attributable to support payments ... and for costs of collection of checks which were returned unpaid.” § 61.182, Fla.Stat. (1989). The legislative history of the C.S.D.T.F. states that the legislature intended the fund “to cover the costs of collection and reimbursement for uncollectible checks” and to place child support payments “in the hands of custodial parents without delay.”[4] In fact, the record indicates that Dixon’s office used the C.S.D.T.F. for reimbursement of returned personal checks paid for child support. Of the $1,063 of uncollectible personal checks received from May 1989 to October 1989, the C.S.D.T.F. reimbursed Dixon’s office over $900.
Even if section 61.181(5) involved a pledge of public credit, the legislature acted pursuant to the strong public purpose of providing spouses and children with prompt support payments. The fact that section 61.181(5) benefits private persons does not invalidate the statute. As we stated in State v. Housing Finance Authority, “it is immaterial that the primary beneficiary of a project be a private party, if the public interest, even though indirect, is present and sufficiently strong.” 376 So.2d at 1160.
It is a matter of national and state concern that children of broken marriages and children born out of wedlock constitute a large percentage of people living in poverty in the United States today.[5] Not only is *299 the amount of support ordered to be paid often inadequate,[6] but also a large percentage of the ordered support is never paid.[7] The efforts of the legislature to increase voluntary compliance with orders of support by allowing the convenience of payment by personal check, and by making the funds readily available to dependent spouses and children are sufficiently strong public purposes to support any incidental pledge of public credit.
Accordingly, we hold that section 61.-181(5) is valid, and does not violate article VII, section 10 of the Florida Constitution. The decision of the trial court is quashed and this case is remanded for proceedings consistent with this opinion.
It is so ordered.
SHAW, C.J. and OVERTON, BARRETT, GRIMES and KOGAN, JJ., concur.
McDONALD, J., recused.

. Section 61.181(5), Florida Statutes (1989), states in pertinent part: "The depository shall accept a support payment tendered in the form of a check drawn on the account of a payor or obligor.... Payments drawn by check on the account of a payor or obligor shall be disbursed within 4 working days.”

. On a motion for rehearing, the trial court found that the legislature had amended the statute which was considered in the initial hearing. The trial court allowed Dixon to amend his complaint to reflect the revised statute, section 61.181, Florida Statutes (1989). The trial court found that the 1989 amendment which increased the time period for disbursal of funds from two to four working days to be of no legal *297 significance. Thus, we address the 1989 version of the statute.

. The fee imposed by section 61.181(2) is limited to three percent of the support payments with a minimum amount of $1 dollar charge and a maximum charge of $5.

. Staff of Fla.H.R.Comm. on Judiciary, HB 116 (1988) Staff Analysis (May 9, 1988) (on file with comm.). Under economic impact for the government, the staff analysis stated: "There will be some number of checks returned unpaid, which will impact the governmental depository. ... The Child Support Depository Trust Fund is established to cover the costs of collection and reimbursement for uncollectible checks."

. As noted in The Governor’s Constituency for Children, Protecting Florida's Children A Blueprint for the Next Decade, 33 (1987), "[m]ore than one in four Florida children live in poverty.” "The children most likely to live in poverty are children in single-parent households. In Florida, 13⅜ of all households are headed by single women. Over half of these families have children under [age] 18. One third of them live in poverty.” Id at 32. See also House Comm. On Ways And Means, Family Welfare Reform Act of 1987, H.R. Rep. 1720, 100th Cong., 1st *299 Sess. 38 (1987) (children are the poorest group of American citizens). See also U.S. Bureau of the Census, No. 750 Statistical Abstract of the United States: 1990 (110th ed. 1990) (45% of families headed by single mothers fell below the poverty line in 1987).

. See Robert G. Williams, Guidelines for Setting Levels of Child Support Orders, 21 Fam. L.Q. 281, 283 (1987). The mean child support order during 1983 was $191 per month, which represented only one quarter of the average monthly expenditure on children in a middle income family.

. See House Comm. On Ways And Means, Family Welfare Reform Act of 1987, H.R.Rep. No. 1720, 100th Cong., 1st Sess. at 40 (58% of mothers with income below the poverty level were not awarded child support; of the mothers awarded support, only one-half received the full amount, 26% received less than was due, and 24% received absolutely nothing).