650 So.2d 10 (1995)
Sara GILBREATH, Petitioner,
v.
STATE of Florida, Respondent.
No. 83090.
Supreme Court of Florida.
February 2, 1995.
Gary R. Gossett, Jr., Sebring, for petitioner.
Robert A. Butterworth, Atty. Gen., Robert J. Krauss, Sr. Asst. Atty. Gen., Chief of Crim. Law, and Brenda S. Taylor, Asst. Atty. Gen., Tampa, for respondent.
WELLS, Justice.
We have for review a decision of the district court that expressly declares to be valid section 365.16(1)(a), Florida Statutes (1991), 629 So.2d 962. We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
Petitioner was charged with making an obscene or harassing telephone call to the home of Ronald A. Hegadis, a postal service management employee. Mr. Hegadis filed a complaint/arrest affidavit against petitioner in which he set forth the following statements made by petitioner to him:
[S]he requested to know what the fuck was going on at the post office, the fucking harassment on Jimmy (her husband) and stated that god damn fucking bitch-whore Mary Lou called for a fucking investigative report on Jimmy, and the fucking bitch falsified the documents. She stated that she followed that fucking-bitch-whore Mary Lou to her god damn driveway last night and if that bitch called her boss (Caldwell Banker Realty) and cause [sic] her to lose her job, her motherfucking ass is gone. She stated fuck those bastards you can't communicate with fucking idiots. She said if those motherfucking cocksuckers don't quit messing with them, they would all be gone starting with that fucking bitch Thullbery (postmaster) fucking whore-bitch Mary Lou, the cocksucking two faced Al Mann, and that pussy-wimp, white faced, pencil-dick cocksucking, redhaired motherfucking Ed White. She didn't give a fuck and it would be worth it to get rid of all of their fucking asses.
In a bench trial before the county court, the postal employee testified that over a two-year *11 period prior to the subject telephone call, he had received at his home approximately 30 similar calls from petitioner. The postal employee testified that he asked petitioner not to call him, told her that he did not like the language she used or the threats she made, and told her he would not relay the threats to the other postal employees. The postal employee further testified that he believed petitioner called him at home to harass him, that these calls annoyed and offended him, and that the threats were aimed at him because he was in a management position at the post office.
The trial court found petitioner guilty of making an obscene or harassing phone call in violation of section 365.16(1)(a), Florida Statutes (1991). This conviction was appealed to the circuit court. In a well-written and well-reasoned order on appeal, the circuit court affirmed the conviction and sustained the statute against the attack that it was an unconstitutional infringement of the right to free speech.
Petitioner sought review from the district court of appeal, which approved the circuit court's decision declaring section 365.16(1)(a), Florida Statutes (1991), valid. We agree with the circuit court's reasoning and approve the decision of the district court. We do, however, narrow the statute's scope by limiting it to telephone calls in which the caller possesses an intent to abuse, threaten, or harass.
We believe the essential point of this case was correctly assessed by the circuit court in its order.
The constitutionality of this statute originally came into question and was addressed by the Florida Supreme Court in State v. Keaton, 371 So.2d 86 (Fla. 1979). The statute originally was worded: "365.16(1) Whoever by means of telephone communication: (a) Makes any comment, request, suggestion, or proposal which is obscene, lewd lascivious, filthy, or indecent ... shall be guilty of a misdemeanor of the second degree... ." The Keaton court held that the statute was unconstitutional as it was not limited to cases where the listener did not consent to the use of the proscribed language and that it therefore [was] in violation of the First Amendment freedom of speech.
That court specifically stated:
We do not hold that the state may not proscribe obscene telephone communications regardless of the circumstances. Were section 365.16(1)(a) limited to obscene calls to a listener at a location where he enjoys a reasonable expectation of privacy (such as the home) which calls are intended to harass the listener, the enactment would pass constitutional muster. Because such a statute would assume the existence of a listener who is unwillingly subjected to vulgar or obscene epithets, it would constitute a valid legislative attempt to protect the substantial privacy interests of the listener.
After this case was decided, the legislature amended the statute to read:
365.16. Obscene or harassing telephone calls
(1) Whoever:
(a) Makes a telephone call to a location at which the person receiving the call has a reasonable expectation of privacy; during such call makes any comment, request, suggestion, or proposal which is obscene, lewd, lascivious, filthy, vulgar, or indecent; and by such call or such language intends to offend, annoy, abuse, threaten, or harass any person at the called number;
... .
is guilty of a misdemeanor of the second degree. .. .
The amended statute complies with the express requirements of the Florida Supreme Court as announced in Keaton. The issue of the constitutionality of the amended statute has never arisen, although subsections (b) through (d) were deemed not to be violative of constitutionally protected rights in State v. Elder, 382 So.2d 687 (Fla. 1980). The Elder court mentions subsection (1)(a) only for the purpose of discussing its decision in Keaton. There are no cases dealing specifically with the constitutionality of § 365.16(1)(a).
Appellant argues that lack of consent is a specific constitutional requirement for a *12 statute such as § 365.16. However, the Florida Supreme Court stated in Keaton that a statute worded as the amended statute is would assume an unwilling listener. Keaton at 92. The Appellee argues that the phrase "... to a location at which the person receiving the call has a reasonable expectation of privacy; ..." allows for the constitutionality of the statute per Rowan v. United States Post Office Dept. 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1979). This Court agrees with that position and recognizes that the right of free speech is sometimes outweighed by privacy interests, here the privacy interests of the listener, Mr. Hegadis. Elder at 692. Accordingly, this Court finds that § 365.16(1)(a) is not in violation of Appellant's constitutional rights of free speech or due process.
Gilbreath v. State, No. 92-55 (Fla. 10th Cir. Ct. September 8, 1993).
The district court emphasized, as do we, that the breadth of the statute was limited by its post-Keaton amendment which restricted the statute only to telephone communications made to a person at a location where that person has a reasonable expectation of privacy, with an intent to offend, annoy, abuse, threaten, or harass. We do further restrict the statute only to calls or language that intend to abuse, threaten, or harass.
With these restrictions we find section 365.16(1)(a) valid for reasons similar to those upon which we found subsection (1)(b) valid. In State v. Elder, 382 So.2d 687, 690 (Fla. 1980), we noted that subsection (1)(b) of this statute was not a proscription of pure speech. Rather, we held that the statutory provision was not directed at the communication of opinions or ideas but at conduct that is the act of making a telephone call or a series of telephone calls without disclosing identity with the intent to annoy, abuse, threaten, or harass the recipient of the call. Though subsection (1)(a) of the statute pertains to identified callers rather than anonymous callers, as under subsection (1)(b), the intent requirement of the statute is presently the same and, similarly, it is the conduct of intentionally making such a call into a place of expected privacy, not pure speech, which is proscribed.
Aptly, the United States Court of Appeals, Fourth Circuit, stated an obvious fact of modern life:
The government has a strong and legitimate interest in preventing the harassment of individuals. The telephone, a device used primarily for communication, presents to some people a unique instrument through which to harass and abuse others. Because the telephone is normally used for communication does not preclude its use in a harassing course of conduct. .. . "Prohibiting harassment is not prohibiting speech, because harassment is not a protected speech. Harassment is not communication, although it may take the form of speech. The statute prohibits only telephone calls made with the intent to harass. Phone calls made with the intent to communicate are not prohibited. Harassment, in this case, thus is not protected merely because it is accomplished using a telephone."
Thorne v. Bailey, 846 F.2d 241, 243 (4th Cir.) (quoting State v. Thorne, 175 W. Va. 452, 333 S.E.2d 817, 819 cert. denied, 474 U.S. 996, 106 S.Ct. 413, 88 L.Ed.2d 363 (1985)), cert. denied, 488 U.S. 984, 109 S.Ct. 538, 102 L.Ed.2d 569 (1988).
The petitioner acknowledges, as do we, that "[t]he State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society." Carey v. Brown, 447 U.S. 455, 471, 100 S.Ct. 2286, 2296, 65 L.Ed.2d 263 (1980). In the case of Frisby v. Schultz, 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988), the Court held:
One important aspect of residential privacy is protection of the unwilling listener. Although in many locations, we expect individuals simply to avoid speech they do not want to hear, the home is different... . [A] special benefit of the privacy all citizens enjoy within their own walls, which the State may legislate to protect, is an ability to avoid intrusions. Thus, we have repeatedly held that individuals are not required to welcome unwanted speech into *13 their own homes and that the government may protect this freedom.
487 U.S. at 484-85, 108 S.Ct. at 2502 (citations omitted). We believe that the statute at issue protects this interest by limiting its application to calls made to a listener with the intent to abuse, threaten, or harass where the listener has a reasonable expectation of privacy.
We narrow the statute's construction and excise the indefinite and vague terms "offend" and "annoy." We do this in accord with the court's discretion to limit a statute to what is constitutional when the statute as so limited is complete in itself and consistent with the stated or obvious legislative intent. State v. Stalder, 630 So.2d 1072 (Fla. 1994); Garden v. Frier, 602 So.2d 1273 (Fla. 1992); Firestone v. News-Press Publishing Co., 538 So.2d 457 (Fla. 1989). We conclude that the intent of this statute is to prohibit intentional abusive, threatening, and harassing conduct by use of the telephone in the manner specified against a person where that person has an expectation of privacy. "Offend" and "annoy" are indefinite as to meaning and give rise to subjective vague connotations. The statute is complete and sufficiently narrow without these terms.
Petitioner further has asserted that even if the statute is constitutional, there was insufficient evidence presented at the trial to sustain her conviction. Our review of the record reveals that there was indeed sufficient evidence for the trial court to find petitioner guilty of a violation of the statute as we have narrowed it.
Therefore the decision of the district court is approved, and the statute is valid as limited and narrowed by this decision.
It is so ordered.
GRIMES, C.J., and OVERTON and SHAW, JJ., concur.
HARDING, J., concurs in result only.
ANSTEAD, J., dissents with an opinion, in which KOGAN, J., concurs.
ANSTEAD, Justice, dissenting.
Because the scope of this statute remains as broad as the statute we considered in State v. Keaton, 371 So.2d 86 (Fla. 1979), I think we are bound by Keaton to again invalidate the statute. In Keaton we held:
Because the scope of section 365.16(1)(a) is not limited to cases where the listener does not consent to use of the proscribed language, a citizen reading the provision might reasonably believe that it criminalizes telling an "off-color joke" to a willing listener or forbids a sexually oriented conversation between lovers. Such a prohibition constitutes a violation of the first amendment freedom of speech. Even if subsection (1)(a) is construed to encompass only language defined as obscene under Miller v. California, the enactment is nevertheless violative of this first amendment right because it does not contain the essential qualifying element  an unwilling listener. Our conclusion in this regard is grounded upon the decision of the United States Supreme Court in Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969).
... .
Just as the first amendment freedom of speech protects the right of an individual to possess obscene matter in his own home, this freedom also prohibits the punishment of the mere use of obscene language in a telephone communication. We recognize that a prosecution for an obscene telephone call to which the listener does not object would rarely occur, for absent an offended party to report the incident, it would generally not come to the attention of law enforcement officials. However, the danger of an overbroad statute lies in its possible chilling effect upon the exercise of a precious first amendment right by those who read its provisions. In invalidating the "public obscenity" statutes in Spears v. State, 337 So.2d 977 [Fla. 1976], we acknowledged this risk:
Overbroad statutes create the danger that a citizen will be punished as a criminal for exercising his right of free speech. If this possibility were the only evil of overbroad statutes, it might suffice *14 to review convictions on a case by case basis. But the mere existence of statutes and ordinances purporting to criminalize protected expression operates as a deterrent to the exercise of the rights of free expression, and deters most effectively the prudent, the cautious and the circumspect, the very persons whose advice we seem generally to be most in need of.

Id. at 980.
Id. at 90-93 (footnote omitted).
The statute as now drafted still punishes speech that takes place in a consensual telephone conversation if, during that conversation, the caller decides to "annoy" or "offend" her partner in conversation by the use of a "dirty" word. For example, friends discussing politics in a friendly conversation may often violate this statute when they reach a point of disagreement and one uses a "dirty" word to "annoy" or "offend" the other. It is just that kind of speech that this Court held was protected in Keaton.
I agree that the state could prohibit non-consensual obscene calls made to a person's home with the specific intent to harass the person called. The statute before us, however, is much broader than this, and I question our authority to rewrite and limit the statute in this way.
KOGAN, J., concurs.