396 So.2d 152 (1981)
John Otis GRIFFIN, Appellant,
v.
STATE of Florida, Appellee.
No. 56240.
Supreme Court of Florida.
March 12, 1981.
*153 Joel Hirschhorn, Miami, for appellant.
Jim Smith, Atty. Gen., and Joel D. Rosenblatt, Asst. Atty. Gen., Miami, for appellee.
ADKINS, Justice.
This is a direct appeal from a final judgment of the Circuit Court of the Eleventh Judicial Circuit in and for Dade County upholding the constitutionality of section 847.014, Florida Statutes (1977). We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. (1972).
The appellant (defendant below), John Otis Griffin, was charged by information with producing or directing obscene photos involving a minor and with procuring a minor for obscene photos, in violation of sections 847.014(2)(a)(1) and (2)(a)(2), Florida Statutes (1977).
Section 847.014 reads in part as follows:
847.014 Minors participating in harmful motion pictures, exhibitions, shows, presentations, or representations. 
... .
(2) OFFENSES AND PENALTIES. 
(a)1. It is unlawful for any person knowingly to produce, conduct, direct, perform, or participate in any photograph, motion picture, exhibition, show, representation, or other presentation which, in whole or in part, depicts sexual conduct, sexual excitement, or sadomasochistic abuse involving a minor.
2. It is unlawful for any person knowingly to aid, abet, counsel, hire, or otherwise procure a minor to perform or participate in any photograph, motion picture, exhibition, show, representation, or other presentation which, in whole or in part, depicts sexual conduct, sexual excitement, or sadomasochistic abuse involving a minor.
These subsections rely upon various definitions set forth in the statute as follows:
(1) DEFINITIONS.  As used in this section:
(a) "Minor" means any person under the age of 18 years.
... .
(c) "Sexual conduct" means acts of masturbation; sexual intercourse; or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks, or, if such person be a female, breast or any act or conduct which constitutes the commission of sexual battery or suggests that such crime is being or will be committed.
(d) "Sexual excitement" means the condition of human male or female genitals *154 when in a state of sexual stimulation or arousal.
(e) "Sadomasochistic abuse" means the flagellation or torture by or upon a person clad in undergarments, a mask, or a bizarre costume or the condition of being fettered, bound, or otherwise physically restrained on the part of one so clothed.
(f) "Harmful to minors" means that quality, whether actual or simulated, of any description, exhibition, presentation, or representation, in whatever form, of nudity, sexual conduct, sexual excitement, or sadomasochistic abuse, when it:
1. Predominantly appeals to the prurient, shameful, or morbid interest of minors,
2. Is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable for minors, and
3. Is without serious literary, artistic, political or scientific value for minors.
The defendant's motions to dismiss, attacking the constitutionality of the statute, were heard and denied. The defendant pled no contest to the charges, reserving the right to appeal the denial of his motions to dismiss. He was placed on probation for five years and was fined one-thousand ($1,000.00) dollars.
The issues presented are whether section 847.014 is unconstitutional as being overbroad and void for vagueness, and contrary to the Constitutions of the United States and Florida; whether the information filed is sufficient as a matter of law; and whether the statute conflicts with article III, section 6, Florida Constitution, which requires that the subject of a statute be expressed in its title.
The defendant contends that section 847.014 is void for vagueness and clearly overbroad. In Zachary v. State, 269 So.2d 669, 670 (Fla. 1972), the Court stated: "The test of a statute insofar as vagueness is concerned is whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practice." [Citation omitted]. Measured by this test, we hold that the statute is impervious to attack upon the grounds of vagueness, as a person of common intelligence and understanding has adequate notice of the conduct proscribed. Sandstrom v. Leader, 370 So.2d 3 (Fla. 1979).
"[T]he line between speech unconditionally guaranteed and speech which may legitimately be regulated, suppressed, or punished is finely drawn." Speiser v. Randall, 357 U.S. 513, 525, 78 S.Ct. 1332, 1341, 2 L.Ed.2d 1460 (1958). In Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), the United States Supreme Court held that obscenity was not within the constitutionally protected freedom of speech or press.
In Miller v. California, 413 U.S. 15, 24, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973), the United States Supreme Court announced a three-part test for determining whether a work was obscene.
The basic guidelines for the trier of fact must be: (a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.
[Citations omitted].
The Court also gave two examples of what a state could regulate under part (b) of the three-part test:
(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.
(b) Patently offensive representation or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.
413 U.S. at 25, 93 S.Ct. at 2615.
The defendant contends that subsections (2)(a)(1) and (2)(a)(2) of the statute fail to incorporate the three-part Miller test, all of which must be satisfied before any material *155 is found to be obscene. The defendant's reliance on Miller is misplaced because the statute in question does not proscribe constitutionally protected speech or activities, but prohibits specific conduct relating to minors. "[S]tates have greater power to regulate nonverbal, physical conduct than to suppress depictions or descriptions of the same behavior." 413 U.S. at 26, 93 S.Ct. at 2616.
The well-being of children is a subject within the state's constitutional power to regulate. Ginsburg v. New York, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). A state may adopt more stringent controls on communicative materials available to minors than on those available to adults. Erzoznick v. City of Jacksonville, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975).
In United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968), a case not dealing with obscenity, the United States Supreme Court held that a state regulation of conduct embodying both speech and nonspeech elements is sufficiently justified if it furthers an important or substantial governmental interest, if the governmental interest is unrelated to the suppression of free expression, and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.
The legislature has exercised its constitutional power to regulate in several areas for the well-being of its children. Activities such as gambling or purchasing alcoholic beverages are permitted for adults, but are prohibited for minors.
Acting within their constitutional powers and duties, the legislature enacted sections 847.014(2)(a)(1) and (2)(a)(2), to protect minors from conduct they determined to be harmful. "The Legislature has a great deal of discretion in determining what measures are necessary for the public's protection, and this Court will not, and may not, substitute its judgment for that of the Legislature insofar as the wisdom or policy of the act is concerned." Hamilton v. State, 366 So.2d 8, 10 (Fla. 1978).
In deciding whether a statute is constitutional, every presumption is to be indulged in favor of the validity of the statute. Golden v. McCarty, 337 So.2d 388 (Fla. 1976). The defendant contends that "sexual conduct," "sexual excitement," and "sadomasochistic abuse" as defined by sections 847.014(1)(c)-(e) are overbroad.
Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court.
Broadrick v. Oklahoma, 413 U.S. 601, 610, 93 S.Ct. 2908, 2914, 37 L.Ed.2d 830 (1973).
[W]here conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.
413 U.S. at 615, 93 S.Ct. at 2917.
It has long been recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society. As a corollary, the Court has altered its traditional rules of standing to permit  in the First Amendment area  "attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." Dombrowski v. Pfister, 380 U.S. 479 at 486 [85 S.Ct. 1116 at 1120, 14 L.Ed.2d 22]. [1965] [Citations omitted.]
413 U.S. at 611-12, 93 S.Ct. at 2915-16.
Finding that the statute in question proscribes conduct, and not constitutionally protected speech or activities, we hold that the defendant does not have standing to attack the statute as it has not been unconstitutionally *156 applied to him. We do not pass upon the question of overbreadth.
Next, the defendant contends that the information filed is insufficient as a matter of law, as it failed to sufficiently describe the obscene photos produced, for which he was charged. We reject the defendant's argument, and find that the information was legally sufficient. See Johnson v. State, 351 So.2d 10 (Fla. 1977).
The information filed by the state attorney tracked the language of the statute and named the minor pictured in the photos. The minor, a witness for the state, testified as to his involvement with the defendant, and described the photos in detail. It was upon this statement that the information was filed. A copy of the minor's statement was given to the defendant, and the photos, although not included with the information or the minor's statement, were made available for inspection. Rules 3.140(k)(1) and (k)(2), Florida Rules of Criminal Procedure, provide that a picture may be described by words of general purport without setting forth a copy or facsimile of the picture.
Finally, the defendant argues that section 847.014 is unconstitutional because the title of the statute is not properly connected with the provisions of the statute. He contends that obscenity prosecutions go beyond the subject of the title.
The legislature is allowed wide latitude in enacting laws, and the courts will not strike down an act unless the title is plainly violative of the Constitution. Farabee v. Board of Trustees, 254 So.2d 1 (Fla. 1971). The Constitution does not require that the title of an act contain a synopsis of all means by which the objective of the law is to be accomplished. City of Miami Beach v. Frankel, 363 So.2d 555 (Fla. 1978). A title is sufficient if it fairly gives adequate notice as will reasonably lead to further inquiry into the body of the act. Pruitt v. State, 363 So.2d 552 (Fla. 1978). The title to section 847.014 gives fair and adequate notice of its contents for purposes of article III, section 6, Florida Constitution.
Accordingly, the judgment is affirmed.
It is so ordered.
BOYD, OVERTON, ALDERMAN and McDONALD, JJ., concur.
SUNDBERG, C.J., concurs specially and dissents in part with an opinion, with which ENGLAND, J., concurs.
SUNDBERG, Chief Justice, concurring specially and dissenting in part.
First, I find it unacceptable to assert that Griffin has no standing to mount a constitutional overbreadth challenge to the criminal statute under which he is convicted and punished. If he lacks standing, then who would have standing to challenge first amendment infringements of Florida's relatively new child pornography statute aimed at producers? Griffin clearly has a concrete and vital interest, and unquestionably has a personal stake in the outcome. Second, I do not think that this Court should attempt to follow the distinction made in United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), between protected speech and non-protected conduct. The United States Supreme Court itself did not actually rely on this untenable distinction in O'Brien, and other cases trying to apply it have ended in a quagmire of sophism. Finally, I believe important and difficult first amendment issues are involved in this case which should not be slighted by this Court.

I.
This Court has followed the federal courts in the area of standing when it is asserted to challenge first amendment overbreadth of a statute. In State v. Keaton, 371 So.2d 86 (Fla. 1979), we adopted the federal policy of a liberal grant of standing when overbreadth is asserted, because of the pervasive chilling effect an overbroad statute can have on first amendment freedoms. See Bates v. State Bar of Arizona, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977); Bigelow v. Virginia, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975); Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Thus in Keaton we *157 allowed standing for an overbreadth challenge by one charged under the statute prohibiting obscene telephone calls. Standing has been granted to an attorney to challenge the overbreadth of an anti-solicitation statute, even though his own conduct was unprotected. Pace v. State, 368 So.2d 340 (Fla. 1979). Likewise, even a defendant convicted under the extortion statute has standing to challenge that statute on grounds that it was overbroad in affecting first amendment freedoms in general. Carricarte v. State, 384 So.2d 1261 (Fla. 1980). This Court has voiced the same concerns as the United States Supreme Court in its liberal grant of standing whenever first amendment rights are implicated. Standing does not depend on the merits of the case, but is accorded to provide the greatest degree of judicial scrutiny for preservation of first amendment freedoms. This is especially necessary when the impact of the statute may be censorial in nature. See Note, The First Amendment Overbreadth Doctrine, 83 Harv.L.Rev. 844, 918 (1970).
Part of Griffin's challenge is based on infringement of his own first amendment rights and not those of others under the overbreadth doctrine. Whether he is right or wrong is simply irrelevant to the issue of his standing. So long as there is an injury to the complaining party and the necessary vital interest to insure a focused and sufficiently adversarial case, standing is present. See Jenkins v. McKeithen, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); Acme Moving & Storage Co. v. Mason, 167 So.2d 555 (Fla. 1964). Griffin is perforce significantly affected by the statute.
The majority's circular use of O'Brien to destroy Griffin's standing is simply incorrect. O'Brien himself was granted standing to challenge the validity of a statute which prohibited burning of draft cards, in spite of the fact that his form of expression contained elements of conduct and in spite of the fact that his actions were held unprotected by the first amendment. Other cases concerning expressions of similar types of anti-war sentiments also allow standing to challenge particular states' laws, theoretically directed at "conduct." Spence v. Washington, 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974) (misuse of American flag); Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971) (slogan on jacket depreciates the draft). The majority relies on a small part of O'Brien as a means to deny Griffin standing, but chooses to ignore the rest of that case and others which grant standing without hesitation.[1] Such an attitude is inconsistent with our previous liberal grant of standing when freedom of expression is involved.

II.
The majority has chosen to follow the distinction made in O'Brien between speech that is protected by the first amendment and conduct which is not. But a closer reading of that case reveals that it does not deny that the first amendment can apply to forms of conduct. Rather, the Supreme Court said that when expression is mixed with conduct, the state may more easily regulate these activities than it can more pure forms of expression.[2]Id. at 376-78, 88 S.Ct. at 1678-79.
*158 The Supreme Court later pointed out that the speech-conduct dichotomy was not really the basis of O'Brien by noting that the decision assumed the first amendment applied, because O'Brien went on to develop a four-part test for the constitutionality of a government regulation. See Buckley v. Valeo, 424 U.S. 1, 16, 96 S.Ct. 612, 633, 46 L.Ed.2d 659 (1976). The four-part test reads:
[W]e think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is not greater than is essential to the furtherance of that interest.
O'Brien, 391 U.S. at 377, 88 S.Ct. at 1679. This four-part test is the critical part of O'Brien and not the speech-nonspeech distinction.
Indeed, close scrutiny of the speech-conduct dichotomy espoused in O'Brien reveals its chimerical nature:
[B]urning a draft card to express opposition to the draft is an undifferentiated whole, 100% action and 100% expression. It involves no conduct that is not at the same time communication, and no communication that does not result from conduct. Attempts to determine which element "predominates" will therefore inevitably degenerate into question-begging judgments about whether the activity should be protected.
Ely, Flag Desecration: A Case Study in the Roles of Categorization and Balancing in First Amendment Analysis, 88 Harv.L.Rev. 1482, 1495 (1975) (footnote omitted). To base first amendment rights entirely on a speech-nonspeech distinction semantically avoids confronting the issue of what expression we will protect under the first amendment and what we will not. "A constitutional distinction between speech and nonspeech has no content. A constitutional distinction between speech and conduct is specious. Speech is conduct, and actions speak. There is nothing intrinsically more sacred about wagging the tongue or wielding a pen; there is nothing intrinsically more sacred about words than other symbols." Henkin, The Supreme Court, 1967 Term  Foreward: On Drawing Lines, 82 Harv.L. Rev. 63, 79 (1968). Clearly the speech-nonspeech distinction cannot be the critical factor in determining first amendment protection since the Supreme Court has categorized as protected speech such physical conduct as wearing protest armbands in a high school. Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).[3] Rather, *159 the critical question focuses on the third requirement of O'Brien: the government interest must be unrelated to suppression of free expression. If the message's content is itself the source of harm that the government seeks to suppress, then state suppression fails to meet the third test of O'Brien.
Courts that have examined the speech-nonspeech distinction have come out at opposite ends. In Southeastern Promotions, Ltd. v. City of Atlanta, 334 F. Supp. 634 (N.D.Ga. 1971), the court held that the stage production "Hair" could not be dissected into speech and nonspeech components to circumvent first amendment application. Id. at 639. In contrast, the court in Southeastern Promotions, Ltd. v. Conrad, 341 F. Supp. 465 (E.D.Tenn. 1972),[4] found the identical stage production to be primarily conduct unprotected by the first amendment. Id. at 475-76. I doubt that a test which produces such disparate results adds much but confusion.[5]
Accordingly, I dissent from that portion of the majority opinion which utilizes the speech-conduct dichotomy and denies standing to appellant to challenge the statute for overbreadth.

III.
Turning to the particular child pornography statute under attack, other courts which have dealt with similar first amendment challenges to this type of statute have reached various results. Recently, a federal court held the Texas child pornography statute unconstitutional. Graham v. Hill, 444 F. Supp. 584 (W.D.Tex. 1978). The Texas statute, which was directed against dissemination, did not contain an obscenity requirement and was held unconstitutionally overbroad as infringing on first amendment rights. The court hinted that a statute aimed at the depiction of children engaging in sexual conduct, i.e., the production aspects of child pornography, would probably be constitutional, even without meeting the obscenity requirements of Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973):
If the statute were limited to prohibiting the depiction of minors actually engaging in sexual conduct, or even if the statute merely prohibited the observance of actual sexual conduct by minors, the Court would likely have no hesitation in declaring its constitutionality.
Graham, 444 F. Supp. at 592. I believe this statement supports the constitutionality of the sections of Florida's statute here challenged since they are aimed only at the production/procurement aspects of child pornography. Notably, Texas followed the advice of the district court in Graham and enacted a statute similar to Florida's aimed at production and procurement, part of which contained no obscenity requirement. See Tex.Penal Code Ann. tit. 9, § 43.25 (Vernon Supp. 1980).
The only other courts to deal with this issue have been in New York. In St. Martin's Press, Inc. v. Carey, 440 F. Supp. 1196 (S.D.N.Y. 1977), rev'd on other grounds, 605 F.2d 41 (2d Cir.1979),[6] the district court did not reach issues of first amendment overbreadth of the New York child pornography statute aimed at both the elements of production and dissemination, though it noted that there was a "serious question as to the facial constitutionality of [the statute]." Id. at 1205. The court went on to declare the statute unconstitutional on due process *160 grounds not relevant to Florida's statute. The doubts of the district court in St. Martin's Press were directly confronted one year later when a lower state court upheld the New York statute against similar first amendment challenges in People v. Ferber, 96 Misc. 669, 409 N.Y.S.2d 632 (Sup.Ct. Trial Term 1978). The court balanced the "right of freedom of expression against the right of the Legislature to protect children against sexual exploitation," upholding the statute in spite of its impact on dissemination as well as production. 409 N.Y.S.2d at 637.[7]
We have used a similar balancing test in State v. Elder, 382 So.2d 687 (Fla. 1980). In Elder we weighed the minimal free speech value associated with an unwanted, anonymous, abusive telephone call against the substantial privacy interests of the listener, to find that these privacy interests entitled the state to protect the unwilling recipient against such calls. Id. at 693. Balancing the freedom of expression interest of the producer or procurer of child pornography against the clearly more substantial state interest in protecting children from both physical and psychological harm[8] that can readily result from participation in production of pornography as described by the statute, I have no hesitation in finding the scales heavily weighed in the state's favor. This is especially true since the challenged sections of Florida's statute deal with producers and procurers involved in child pornography. These persons clearly have a smaller first amendment interest than do persons who are involved in distribution:
In regulating the producer's activity, the legislatures have consistently made the judgment that the state's interest in protecting its children outweighs any first amendment right the producer might have in producing material depicting children engaged in certain sexual conduct. The legislative judgment appears constitutional, provided the prohibited sexual conduct is defined to only include activities that harm the child. Thus, legislation regulating producers need not require the ultimate product be obscene, and those imposing this requirement are unnecessarily strict, provided prohibited conduct covers only harmful activities.
Note, Protection of Children from Use in Pornography: Toward Constitutional and Enforceable Legislation, 12 U.Mich.J.L.Ref. 295, 310-11 (1979) (footnote omitted, emphasis added).
The challenged statute can also pass the four-part O'Brien test which I have quoted. The third part of this test is the only element that warrants examination in this case. The governmental interest must be unrelated to suppression of free expression:
The critical question would therefore seem to be whether the harm that the state is seeking to avert is one that grows out of the fact that the defendant is communicating, and more particularly out of the way people can be expected to react to his message, or rather would arise even if the defendant's conduct had no communicative significance whatever.
Ely, Flag Desecration, supra at 1497 (footnote omitted). The harm that the state seeks to avert, the physical and psychological damage to children involved in producing pornography, is a harm independent from and unrelated to the communicative *161 aspects of the depictions themselves. Thus, it is not the impact or effect the depiction would have upon the viewer but rather the harm surrounding the production aspects that is the focus of the statute.
Finding that sections 847.014(2)(a)(1) and (2), Florida Statutes (1977), can pass constitutional muster under either a balancing test or the O'Brien test, I would uphold these sections of the statute against first amendment challenges. I agree with the majority that Griffin's other constitutional challenges are without merit.
ENGLAND, J., concurs.
NOTES
[1] The majority relies entirely on the following sentence:

We cannot accept the view that an apparently limitless variety of conduct can be labeled "speech" whenever the person engaging in the conduct intends thereby to express an idea.
United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968).
[2] We have recognized this in State v. Elder, 382 So.2d 687 (Fla. 1980), another challenge to the abusive telephone call statute, but to a different section than that involved in State v. Keaton, 371 So.2d 86 (Fla. 1979):

[T]he use of words as the method with which to harass the recipient of the call involves conduct mixed with speech, to which the controlling constitutional considerations differ some what from those applied to pure speech. Specifically, with regard to overbreadth, the applicable test is stated in Broadrick v. Oklahoma, 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830 (1973): "[W]here conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."
Elder, 382 So.2d at 690 (emphasis added). We recognized in Elder that some free speech concerns might be implicated by the abusive telephone call statute, but weighed these minimal concerns against the substantial privacy interests of the unwilling listener to be let alone. Id. at 692-93. Once again we did not declare that because a statute was directed primarily at regulating conduct and only secondarily involved speech, there was no first amendment concern, and therefore no standing to challenge the statute on an overbreadth basis. The difference between Keaton, which struck down a section of the abusive telephone call statute, and Elder, which upheld a related section against first amendment challenges, was the additional element of the unwilling listener contained in the section challenged in Elder. Both sections dealt with the same type of conduct, so the fact that conduct was involved could not have been ultimately determinative of whether first amendment freedoms had been violated.
[3] It is arguable that child pornography statutes are aimed in some part at the depictions themselves. These statutes do not protect children from all sexual abuse, but only sexual conduct used for depictions. The prohibition is not against sexual activity involving children, but rather against a depiction of that activity. Speech elements are therefore intertwined with conduct elements. See Note, Child Pornography: A New Role for The Obscenity Doctrine, 1978 U.Ill.L.F. 711, 743 n. 156. See also Note, Protection of Children from Use in Pornography: Toward Constitutional and Enforceable Legislation, 12 U.Mich.J.L.Ref. 295, 309 (1979): "Because child pornography production and distribution involves visual material, legislation regulating such material must be considered with due regard for first amendment freedoms."
[4] Aff'd, 486 F.2d 894 (6th Cir.1973), rev'd on other grounds, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975), rev'd without opinion, 516 F.2d 902 (6th Cir.1975). Circuit Judge McCree pointed out in his dissent that the Supreme Court had "implicitly rejected the technique of excerpting and censoring specific conduct from a protected vehicle" in California v. LaRue, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972). 486 F.2d at 899.
[5] Justice Douglas has several times attacked this distinction as being ethereal. See Eisenstadt v. Baird, 405 U.S. 438, 458, 92 S.Ct. 1029, 1039, 31 L.Ed.2d 349 (1972) (concurring opinion); Brandenburg v. Ohio, 395 U.S. 444, 455, 89 S.Ct. 1827, 1833, 23 L.Ed.2d 430 (1969) (concurring opinion).
[6] The circuit court of appeals felt that there was no "case or controversy" since St. Martin's Press had never been prosecuted under the statute.
[7] It is notable that none of these three cases confronting the issue which we now face has denied relief based on lack of standing. See Section I supra.
[8] The potential for harm to a child involved in such activities is enormous:

Perhaps the greatest harms are the emotional and psychological damage to the child who is forced to engage in various sexual acts at a young age. As a result of such early sexual encounters, it is often difficult for a child to develop healthy affectionate relationships in the future. Evidence shows that sexually abused children tend to have sexual dysfunctions later in life, including promiscuity and frigidity. Furthermore, children who have been sexually abused tend to become sexual abusers as adults. Hence, the psychological and emotional harm often extends throughout the life of the child.
Note, Protection of Children from Use in Pornography, supra note 3, at 299-300 (citations, which include United States Senate and House reports on the subject, omitted).